## V. R. BARTLETT & CO. *v.* T. C. NEWCOMB.

**Contracts—Delivery of Personal Property—Possession Passes With Title—Resumption of Possession—Tortious.**

The possession was to pass with the title, and that when the tobacco was received and weighed by January & Son, the right of Newcomb to control it ceased. Held, That in such a state of case, the resumption of the possession of tobacco was a tortious seizure by Newcomb, and the value of the same at the time of the seizure constituted the amount of the set-off against the contract price.

**Same—Violation of Contract.**

In as much as Newcomb was the first to violate the contract, he ought not to be allowed to recover damages against Bartlett & Co., because they afterwards declined to carry it out.

APPEAL FROM JEFFERSON CIRCUIT COURT.    C. P. DIVISION.

February 8, 1872.

OPINION OF THE COURT BY JUDGE LINDSAY:

We hold that according to the terms of the contract between Newcomb and Bartlett & Co., the title to the tobacco was to vest in the latter, upon its being delivered to and weighed by January & Son, and that Newcomb had the right to demand the contract price for the same as soon as the bills of lading should be received by the appellants.

We further hold that the possession was to pass with the title, and that when the tobacco was received and weighed by January & Son, the right of Newcomb to control it ceased.

It follows, therefore, that if Newcomb had in point of fact surrendered to January & Son the possession of the last lot of the tobacco, when it was weighed, his right to demand from Bartlett & Co. the contract price therefor when he presented to them the bills of lading would have been perfect, and upon their refusal to pay, he might have instituted suit against them at once. In such a state of case the presumption of the possession of the tobacco, at Cincinnati, would have been a tortious seizure by Newcomb, and the value of the same, at the time of the seizure, would constitute the amount which Bartlett might have set off in this action against the contract price.

But the evidence as presented by the record conduces to show that Newcomb never did surrender to January & Son the thirty-two hogsheads of tobacco shipped on the 26th of September, 1864, and leaves no doubt that he retained the possession of the four hogsheads on the following day. January swears that he shipped the first lot by the directions of Newcomb, who it seems either accompanied it to Cincinnati or had preceded it to that city, and the last lot was consigned to him at that place. It further appears that under some arrangement not explained by the record, Newcomb was enabled, without the aid of legal process, to detain at Cincinnati, for ten or twelve days, the thirty-two hogsheads consigned to Bartlett & Co.

The failure of Newcomb to surrender to January & Co., as agents for appellants, the tobacco in question as he was required by his contract to do, we may assume grew out of the fact that the latter were setting up some claim against him on account of the damage to certain other tobacco thereto received and paid for by them. That Newcomb was detaining the lot shipped on

the 26th of September for some such reason, is made to appear by the fact that Smith was sent to Louisville with the bills of lading to demand payment of the contract price, and the further fact that when such payment was refused the information was sent to Newcomb, at Cincinnati, by telegram. The result of this failure upon the part of Newcomb to comply with the terms of his contract by surrendering the control of the tobacco to the agents of Bartlett & Co., was to delay its arrival at Louisville for ten or twelve days, during which time its market price was steadily declining.

If these conclusions be correct, it seems to us that inasmuch as Newcomb was the first to violate the contract, he ought not to be allowed to recover damages against Bartlett & Company, because they afterwards declined to carry it out. The more especially as they could not do so without great loss to themselves, which loss was the proximate and necessary result of Newcomb's failure to abandon the possession and control of the produce to January & Son as he had agreed to do. For these reasons we are constrained to reverse the judgment of the court below, and remand the cause for a new trial upon principles not inconsistent with this opinion.

*Gazlay, Yeaman, Reinecke,* for appellant.
*J. P. Harbeson,* for appellee.